# CIRCUIT COURT OF ARLINGTON COUNTY

Thomas M. Rohrbaugh et al.

v.

Bonnie Kreidler et al.

July 20, 2006

Case No. 06-394

BY JUDGE JOANNE F. ALPER

This case came before the Court on June 22, 2006, for a hearing on Defendants' Demurrers. Plaintiffs' Complaint contains six counts: Breach of Contract, Professional Malpractice, Defamation, Statutory Business Conspiracy, Violation of the Virginia Uniform Trade Secrets Act (VUTSA), and Respondeat Superior. Defendants Bonnie and Jerry Kreidler, Jewell and Associates, and Wind2 and Deltek demurred to each count of the Complaint. Having considered the arguments of counsel and reviewed the pleadings and supplemental memoranda, this opinion will set forth the Court's ruling on the Demurrers to each Count. Additionally, for the reasons set forth below, the Demurrers as to all claims by Plaintiffs TM/R and Matrix Settles against all Defendants and the Demurrers filed by Defendants Wind2 and Deltek are sustained without leave to amend.

*Facts*

The facts set forth below are derived from Plaintiffs' Complaint ("Cplt."). In considering a demurrer, the Court must accept as true "all material facts properly pleaded," and draw all reasonable inferences in the Plaintiffs' favor. *Breeding v. Hensley*, 258 Va. 207, 211, 519 S.E.2d 369, 371 (1999).

Plaintiff Thomas M. Rohrbaugh was the Chief Engineer and Director of Engineering for URS Corporation ("URS"), an engineering firm in Washington, D.C., where he had worked for over ten years. Cplt. at 10. Between 2003 and 2005, while employed by URS, Mr. Rohrbaugh had discussed a potential professional relationship with Settles Associates, Inc., d/b/a Matrix Settles Architecture & Interior Design ("Matrix Settles"), a Virginia engineering firm. Cplt. at 2-3. Although negotiations between Mr. Rohrbaugh and Matrix Settles were ongoing, the parties had not reached a formal, binding agreement. The parties had outlined informal, non-binding business terms in June 2005; however, an agreement was not reached at that time. Cplt. at 4.

In August 2005, Matrix Settles formed an affiliated company, TM/R, L.L.C., d/b/a TM/R Engineering, L.L.C. ("TM/R"). Certain Matrix Settles employees were aware of their company's discussions with Mr. Rohrbaugh, and principals of Matrix Settles informed staff to keep the negotiations confidential because an agreement with Mr. Rohrbaugh had not yet been reached. Cplt. at 4-5.

Matrix Settles and TM/R hired Jewell and Associates ("Jewell"), Deltek Systems, Inc. ("Deltek") and Wind2 Software, Inc. ("Wind2") to provide technological services and software programs. Cplt. at 5. Bonnie Kreidler worked for Jewell and was hired to set up accounting software for the newly formed TM/R. Bonnie Kreidler was informed by Eric Wilson, a Matrix Settles employee, that TM/R stood for "Team Matrix Rohrbaugh." TM/R was jokingly referred to among Matrix Settles staff as "Team Matrix Rohrbaugh," but Plaintiff states that TM/R is actually "a fictional name with no specific meaning." Cplt. at 4-5.

Bonnie Kreidler's husband, Jerry Kreidler, worked with Mr. Rohrbaugh at URS. The Complaint alleges that Bonnie Kreidler disclosed confidential information to her husband relating to Mr. Rohrbaugh's involvement with TM/R, including the purported meaning of "TM/R." Cplt. at 6. On September 6, 2005, Bonnie "and/or" Jerry Kreidler allegedly told URS senior management that Mr. Rohrbaugh had formed a firm named

"Team Matrix Rohrbaugh" and was leaving URS. Mr. Rohrbaugh denied the accusation but was subsequently terminated for violating the URS ethical code prohibiting employee conflicts of interest. Cplt. at 6-7. As a result of Mr. Rohrbaugh's termination from URS, he did not receive a severance package and lost entitlement to employee stock options, the first of which vested on September 16, 2005. On January 31, 2006, Mr. Rohrbaugh entered into an employment agreement with Matrix Settles and TM/R.

The Complaint alleges the following counts against Defendants: (1) Breach of Contract by Bonnie Kreidler and June Jewell; (2) Professional Malpractice by Bonnie Kreidler and June Jewell; (3) Defamation against Bonnie and Jerry Kreidler; (4) Statutory Business Conspiracy against Bonnie and Jerry Kreidler; (5) Violation of the Virginia Uniform Trade Secrets Act against Bonnie and Jerry Kreidler; and (6) Respondeat Superior against Jewell, Wind2, and Deltek. Plaintiffs seek compensatory damages for each count in addition to punitive damages for Defamation.

## Discussion

In considering a demurrer, the Court does not evaluate the merits of the claim. The sole question is whether the factual allegations in the complaint state a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). The Court must draw all reasonable inferences in the Plaintiff's favor and "admit[] the truth of all material facts properly pleaded." *Breeding v. Hensley*, 258 Va. 207, 211, 519 S.E.2d 369, 371 (1999). A demurrer must be sustained if the facts alleged by Plaintiff fail to state a legal claim upon which relief can be granted.

As a preliminary matter, the claims of the corporate Plaintiffs Matrix Settles and TM/R must be dismissed because they do not allege a cause of action for damages against any of the Defendants. At the hearing, Plaintiffs argued that they were damaged by not receiving the capital from Mr. Rohrbaugh's URS stock options and because Mr. Rohrbaugh was discredited among members of the business community. The Court finds, however, that these claims belong to Mr. Rohrbaugh individually, and not to the corporate Plaintiffs. As argued in the Demurrers and at the hearing, it appears that Matrix Settles and TM/R may have actually *benefited* from the circumstances surrounding the termination of Mr. Rohrbaugh's employment with URS. Accordingly, the Defendants' Demurrers as to all claims by Matrix Settles and TM/R are sustained without leave to amend. Because the Complaint does not

specify which Plaintiff(s) are bringing each claim, the Court assumes that all three Plaintiffs brought each count. However, since the corporate Plaintiffs are dismissed from this suit, "Plaintiff" henceforth refers to Mr. Rohrbaugh only.

*Count I: Breach of Contract*

Plaintiff claims that both June Jewell[1] and Bonnie Kreidler, as June Jewell's agent, had a contractual obligation to keep proprietary information concerning Mr. Rohrbaugh confidential. Cplt. at 8. Bonnie Kreidler and June Jewell allegedly failed to meet this obligation when Bonnie Kreidler obtained and disclosed confidential information concerning Mr. Rohrbaugh to her husband and URS executives. *Id.* Plaintiff alleges that Bonnie Kreidler signed a confidentiality agreement with Jewell preventing such disclosures and that June Jewell is liable for breach of contract for failing to properly supervise Bonnie Kreidler. *Id.*

A claim for breach of contract requires: (1) a legally enforceable obligation, (2) violation of that obligation, and (3) injury caused by the breach of the obligation. *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). The Complaint, however, fails to establish that either Bonnie Kreidler or June Jewell had a contractual or any legally enforceable obligation to Mr. Rohrbaugh. The Complaint does not allege that Mr. Rohrbaugh was a client of Bonnie Kreidler or her employer during the time in question.

Plaintiff's counsel also argued that Mr. Rohrbaugh was a third-party beneficiary of the contract between Jewell and TM/R, and that all three Plaintiffs were third-party beneficiaries of the contract between Jewell and Bonnie Kreidler; however, there are no facts in the Complaint to support this assertion. In Virginia, third-party beneficiary status requires a showing that "the parties to the contract clearly and definitely intended to confer a direct benefit upon him. A mere incidental beneficiary of a contract does not have standing to sue on the contract." *Kelley v. Griffin*, 252 Va. 26, 29, 471 S.E.2d 475, 477 (1996). Plaintiff has failed to allege any facts to support the claim that the contract between Jewell and TM/R was intended to confer a benefit upon him. Therefore, the Complaint does not support a contract claim nor establish Plaintiff's status as a third-party beneficiary. The Demurrers to Count I are sustained without leave to amend.

---

[1] The Court notes that Jewell and Associates not June Jewell is a named Defendant in the Complaint.

*Count II: Professional Malpractice*

Plaintiff's professional malpractice claim rests on the assertion that Bonnie Kreidler and June Jewell disclosed proprietary information. This claim is dependent upon a satisfactory showing that Bonnie Kreidler and June Jewell had a contractual, professional relationship with Mr. Rohrbaugh. Without a legal basis for a professional duty, there can be no claim for malpractice or violation of a duty. *See* Count I: Breach of Contract, *supra*. Moreover, privity of contract is an essential element of a count seeking economic damages for the negligent performance of a contract. *See Ward v. Ernst & Young*, 246 Va. 317, 323-26, 435 S.E.2d 628, 631-33 (1993). However, the Complaint does not allege privity of contract between Mr. Rohrbaugh and Bonnie Kreidler or between Mr. Rohrbaugh and June Jewell or Jewell and Associates. Having found no contractual or professional duty to Mr. Rohrbaugh by Defendants Bonnie Kreidler or June Jewell, the Demurrers to Count II are sustained without leave to amend.

*Count III: Defamation*

To state a cause of action for defamation a complaint must allege three elements: (1) publication, (2) of a false, defamatory statement, (3) with the requisite intent. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (1993). The false statement must be alleged with particularity and "tend so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id; see also Perk v. Vector Resources Group, Ltd.*, 253 Va. 310, 317, 485 S.E.2d 140, 144 (1997).

In the instant case, the alleged defamatory statements are that TM/R stands for Team Matrix Rohrbaugh, and that Mr. Rohrbaugh was a principal of another firm, implying that he had already joined TM/R. Cplt. at 11. Plaintiff argues that these statements qualify as defamation *per se*, which includes statements "[that] impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment, [and] those which prejudice such person in his or her profession or trade." 253 Va. at 316, 485 S.E.2d at 143.

The Court, however, finds that Mr. Rohrbaugh's defamation claim against Bonnie and Jerry Kreidler fails because Plaintiff does not allege that Bonnie or Jerry Kreidler knew or had reason to know that the words of the allegedly defamatory statements were false. Plaintiff specifically admits in the Complaint that Mr. Rohrbaugh had been in negotiations with TM/R and Matrix Settles and that information was known to others in Matrix Settles.

Moreover, the allegedly defamatory statements fail to meet the legal requirement of harming Mr. Rohrbaugh's reputation. A defamation claim may arise "by inference, implication, or insinuation"; however, the Court cannot "extend the meaning of the words used beyond their ordinary and common acceptance." 253 Va. 317, 485 S.E.2d at 144. For these reasons, the Demurrers to Count III are sustained with leave to amend if Plaintiff be so advised.

*Count IV: Statutory Business Conspiracy*

Under Virginia Code § 18.2-499 *et seq.*, a claim for injury to reputation, trade, business, or profession requires a showing that two or more persons acted intentionally, purposefully, and willfully to injure another's trade or business. There must be an allegation that they "combined together to effect a preconceived plan and unity of design and purpose." *Bay Tobacco, L.L.C. v. Bell Quality Tobacco Prods., L.L.C.*, 261 F. Supp. 2d 483 (E.D. Va. 2003). Plaintiff must allege legal malice, however it is not necessary to allege that injury was the conspirator's primary and underlying purpose. *Simmons v. Miller*, 261 Va. 561, 577, 544 S.E.2d 666, 676 (2001).

The Court finds that Plaintiff's Complaint sufficiently states a cause of action for statutory business conspiracy. The Complaint alleges that Bonnie and Jerry Kreidler intentionally conspired to harm Mr. Rohrbaugh by imputing to him "an unfitness to perform his job . . . a lack of integrity in the discharge of his job, and prejudiced [him] in his profession. . . ." Cplt. at 11. The Court must presuppose the truth of all material facts properly pleaded, and, as such, the Demurrers to Count IV are overruled.

*Count V: Virginia Uniform Trade Secrets Act ("VUTSA")*

Virginia Code § 59.1-336 *et seq.* defines a "trade secret" as information that: "(1) derives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

The Court sustains the Demurrers to Plaintiff's claim under the VUTSA because neither the meaning of the letters TM/R nor the issue of whether Mr. Rohrbaugh had agreed to join them is a "trade secret" within the meaning of the VUTSA. The facts alleged in the Complaint do not support the inference that this information was confidential nor does the information confer

economic value upon Bonnie and Jerry Kreidler. Moreover, even if this information constituted a "trade secret," it was not "misappropriated" under the statute, which requires that inappropriate means were used to acquire and/or disclose the information. Va. Code § 59-336. The Complaint does not allege that Eric Wilson specifically informed Bonnie Kreidler of the confidential nature of what TM/R stood for; only "certain staff" were warned. Cplt. at 4-5. For this reason, the Demurrers to Count V are sustained with leave to amend if Plaintiff be so advised.

*Count VI: Respondeat Superior*

Plaintiff's respondeat superior claim alleges that Bonnie Kreidler was acting within the scope of her employment when she conveyed information concerning Plaintiff and TM/R. During the June 22, 2006, hearing, the Court sustained Wind2/Deltek's Demurrer on this Count. Jewell is allegedly liable under the doctrine of respondeat superior for Bonnie Kreidler's negligent breach of contract, negligent breach of the duty of confidentiality, defamation, and violation of the Virginia Trade Secrets Act. Cplt. at 16-17. Plaintiff relies on *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 476 S.E.2d 172 (1996), in which the Plaintiff was sexually assaulted by her psychiatrist during a professional evaluation and sued the psychiatrist's employer under a theory of respondeat superior.

The Court notes that, under Virginia law, respondeat superior is a theory of liability, not a separate cause of action. Moreover, the facts alleged do not establish a claim that Bonnie Kreidler was acting within the scope of employment when the information at issue was conveyed. *Giant of Maryland, Inc. v. Enger*, 257 Va. 513, 516, 515 S.E.2d 111, 112 (1999). "An act is within the scope of the employment if (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed . . . with the intent to further the employer's interest. . . ." *Sayles v. Piccadilly Cafeterias, Inc.*, 242 Va. 328, 332, 410 S.E.2d 632, 634 (1991); *Kensington Assocs. v. West*, 234 Va. 430, 362 S.E.2d 900 (1987). The tort in *Plummer* was committed during working hours at the defendant's place of employment, and the defendant exploited his professional capacity to commit the wrong. 252 Va. at 233. The Complaint here does not allege that Jewell directed Bonnie Kreidler to convey the allegedly detrimental information, nor does Plaintiff establish facts supporting the inference that Bonnie Kreidler intended to further her employer's interests by disclosing information to her husband. Moreover, the Complaint does not allege that Bonnie Kreidler obtained or disseminated information relating to Mr. Rohrbaugh's

employment during working hours, at her place of business, or in conjunction with her professional responsibilities to provide technological services to Matrix Settles. As such, the demurrers to Count VI are sustained.

## Conclusion

The Demurrers to Count I: Breach of Contract and Count II: Professional Malpractice are sustained without leave to amend. The Demurrers to Count III: Defamation and Count V: VUTSA are sustained with leave to amend; Plaintiff is granted leave to file an amended Complaint as to those Counts within twenty-one days of the date of this letter. The Demurrers to Count VI: Respondeat Superior are sustained, however, Plaintiff is granted leave to amend any remaining counts to include respondeat superior as a theory of liability but not a separate cause of action should Plaintiff be so advised. The Demurrers to Count IV: Statutory Business Conspiracy are overruled. The Demurrers as to all claims by Plaintiffs TM/R and Matrix Settles against all Defendants and the Demurrers filed by Defendants Wind2 and Deltek are sustained without leave to amend.