COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Beales and AtLee
Argued at Richmond, Virginia

PUBLISHED

SHANESSA V. PITTMAN

v.     Record No. 1572-17-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
JANUARY 8, 2019

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Samantha E. Freed (Lepold & Freed, PLLC, on brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Mark R. Herring, Attorney General, on brief), for appellee.

This appeal seeks our review of the degree to which a gratuitous relationship can rise to

the level necessary to be sufficient for the crime of embezzlement.  Shanessa Pittman

("Pittman") appeals the May 11, 2017 decision of the Circuit Court of Albemarle County

("circuit court") convicting Pittman of embezzlement under Code §§ 18.2-95 and 18.2-111 and

sentencing her to twenty years in prison with all but one year and three months suspended.

Pittman argues that the circuit court erred by overruling her motions to strike at the end of the

Commonwealth's evidence and the end of the case.

I.  BACKGROUND

In October 2015, Pittman contacted an acquaintance, Darcelle Pettis ("Pettis"), seeking a

ride home from the hospital.  Pettis rented a car for this purpose from Enterprise Rent-A-Car

("Enterprise"), and picked Pittman up at the hospital the evening of October 27, 2015.  On the

way back to Pettis' house, the pair stopped at a gas station.  Pettis, suffering from a migraine

headache, allowed Pittman to drive the car the remainder of the way to Pettis' house.  After

arriving at Pettis' house, Pittman asked if she could use the rental car to pick up a prescription for herself from a nearby pharmacy, as Pettis' migraine had not abated. Pettis agreed that Pittman could drive to the pharmacy only and return to Pettis' home. Pittman agreed and left. Pittman texted and called Pettis later that evening saying that she was coming back. Pettis, still suffering from her migraine, went to bed unaware that Pittman had never returned with the rental car.

The following morning, upon realizing that Pittman had never returned with the car, Pettis phoned Pittman to inform her that the rental was for only one day and that the car was due back at Enterprise by 2:00 p.m. Pittman responded that she had fallen asleep and would be unable to return the car by that time. Pettis subsequently called Enterprise and extended the rental for an additional day. When Pittman did not return the car the following day, October 29, 2015, Pettis contacted Enterprise and explained the situation. Enterprise advised Pettis to contact the police. Albemarle County Police Officer Jeffrey Turner ("Officer Turner") came to Pettis' home to take a missing vehicle report. While Officer Turner was at Pettis' home, Pittman called Pettis, complaining that Pettis was trying to get her in trouble over the car. Officer Turner talked to Pittman on the phone and explained that there would be no repercussions if she returned the car that day. Pittman did not return the car, and Pettis made repeated calls to Pittman over the following week regarding the car to no avail.

On November 5, 2015, Enterprise regained possession of the car, which had been towed to a body shop in Smithtown, New York, after suffering $6,643.69 of estimated damage. On January 6, 2016, Pittman was arrested for grand larceny of a motor vehicle. The grand jury for Albemarle County returned an indictment for embezzlement under Code §§ 18.2-95 and 18.2-111. Following a bench trial on May 11, 2017, Pittman was found guilty and this appeal follows.

## II. ANALYSIS

### A. Standard of Review

"Under familiar principles of appellate review, we view the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party that prevailed below." Banks v. Commonwealth, 41 Va. App. 539, 543 (2003). "'In so doing, we must "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.""'" Cirios v. Commonwealth, 7 Va. App. 292, 295 (1988). "Additionally, this Court has the duty to review the evidence and affirm the circuit court's judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Walker v. Commonwealth, 272 Va. 511, 513 (2006); Code § 8.01-680.

### B. Whether the Evidence Was Sufficient to Convict Pittman of Embezzlement

Code § 18.2-111 states, in pertinent part, that "[i]f any person wrongfully and fraudulently use, dispose of, conceal or embezzle any . . . personal property . . . which shall have been entrusted or delivered to him by another or by any court, corporation or company, he shall be guilty of embezzlement." Though her objection was to the sufficiency of the evidence, Pittman presents three arguments veering towards statutory interpretation and arguing that under the language of the statute she cannot have committed embezzlement.

First, Pittman argues that there is no evidence of a fiduciary relationship between herself and either Pettis or Enterprise and that such a relationship is a prerequisite for embezzlement. Second, Pittman argues that the rental car was not Pettis' personal property, and therefore could not have been entrusted to her within the meaning of the statute. Finally, Pittman argues there

was no evidence that she intended to deprive the owner of the car, Enterprise, of its use or that she knew the period of the rental agreement.

We have previously held that to prove embezzlement "the Commonwealth need not establish the existence of a formal fiduciary relationship," but must show both that the defendant was entrusted with the property in question and that the defendant had the specific intent to deprive the rightful owner of said property. Rooney v. Commonwealth, 27 Va. App. 634, 644 (1998). While the circuit court found that the evidence established entrustment via a confidential relationship, given our duty to decide cases on the best and narrowest grounds, we need not review the analysis of the circuit court regarding entrustment because we note that the statutory test is two-pronged and framed in the disjunctive, requiring the property to be "entrusted *or delivered*." See Luginbyhl v. Commomwealth, 48 Va. App. 58, 64 (2006). Neither party addresses the sufficiency of the evidence regarding the "delivered" portion of this test with respect to the vehicle in question here. Frankly, neither does much of our previous jurisprudence interpreting this statute. In Leftwich v. Commonwealth, 61 Va. App. 422 (2013), we noted that a "plain reading" of Code § 18.2-111 provides three independent ways that a person may be guilty of embezzlement:

> when a person misappropriates property 1) "received for another or for [her] employer," or 2) "by virtue of [her] office, trust, or employment," or 3) "which shall have been entrusted or delivered to [her] by another."

Id. at 428. This was because, "[t]he use of the disjunctive word 'or,' rather than the conjunctive 'and,' signifies the availability of alternative choices." Id. (quoting Bunch v. Commonwealth, 225 Va. 423, 442 (1983)). Though we were able to dispose of Leftwich without a delivery analysis, the same disjunctive "or" which separated those three options divides "entrusted" from "delivered."

The bulk of jurisprudence regarding embezzlement cases quote Code § 18.2-111 and then make a statement to the effect that "[t]o constitute the statutory crime of embezzlement it is necessary to prove that an accused wrongfully appropriated to his own use or benefit, with the intent to deprive the owner thereof, the property of another which has been entrusted to him by reason of his employment or office." Webb v. Commonwealth, 204 Va. 24, 34 (1963) (citing Lee v. Commonwealth, 200 Va. 233, 235 (1958); 6 Mich. Jur., Embezzlement, § 3). This focus on the entrustment aspect of the crime of embezzlement, however, does not operate to exclude the alternative element of "delivered" as an option to constitute a completed embezzlement.

In analyzing the language of a statute, "we assume that the legislature chose the wording of a statute with care, and we are bound by the legislature's construction in interpreting the statute . . . . Thus, '[t]he words of a statute should be given "their common, ordinary and accepted meaning" absent a contrary intent by the legislature.'" Bennett v. Commonwealth, 60 Va. App. 656, 666 (2012) (quoting Mouberry v. Commonwealth, 39 Va. App. 576, 583 (2003)). "The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results." Branch v. Commonwealth, 14 Va. App. 836, 839 (1992) (citations omitted). An interpretation of Code § 18.2-111 which ignored the term "deliver" would be such a narrow construction which contradicts the clear intent of the legislature. The plain meaning of "deliver" in this context is to "give, transfer, yield possession or control of." Deliver, Webster's Third New International Dictionary (1961). "Delivered" following the disjunctive "or" demonstrates that the General Assembly intended this to be a separate and alternative element from "entrusted." The record in this case clearly shows that Pettis "delivered" the vehicle to Pittman for a limited purpose, and thus an analysis of whether Pettis also "entrusted" the vehicle to Pittman is unnecessary.

Turning to the sufficiency of the evidence demonstrating Pittman's intent, Stegall v. Commonwealth, 208 Va. 719 (1968), where our Supreme Court similarly dealt with the embezzlement of a rental car, is instructive. The defendant in Stegall argued that the evidence was insufficient he had the intent to embezzle, claiming that he had rented the car at the behest of a business associate who later left with the vehicle. Our Supreme Court held that "[t]he failure of defendant to return the vehicle, coupled with the surrounding circumstances, furnishes sufficient evidence from which the trial court could conclude that the defendant, after lawfully coming into possession of the automobile, did form an intent to wrongfully and fraudulently convert it to his own use." Id. at 723. That it was Pettis in the present case who signed the papers and entrusted the car to Pittman, a role reversal from Stegall, does not change the calculus regarding the sufficiency of the evidence. Here, Pittman failed to return the vehicle despite repeated requests from Pettis and after being advised to do so over the phone by a police officer—a warning which came when Pittman called Pettis to complain that Pettis was trying to "get her in trouble" regarding the car. Pittman made the call to Pettis with an obvious understanding that what Pittman was doing was wrong, and any possible confusion regarding that fact was undoubtedly clarified by the phone conversation with Officer Turner. As in Stegall, Pittman's failure to return the vehicle, when coupled with the surrounding circumstances, amply demonstrates fraudulent intent on the part of Pittman.

### III. CONCLUSION

As there is no fiduciary or other special relationship required to prove embezzlement and that it is sufficient as a matter of law to "wrongfully and fraudulently use, dispose of, conceal or embezzle any . . . personal property . . . which shall have been . . . delivered to him by another," the question before us is simply whether the evidence was sufficient to demonstrate both a delivery of personal property from Pettis to Pittman and that Pittman had the requisite fraudulent

intent to convert it to her own use. As there is evidence in the record to support both conclusions, the judgment of the circuit court is affirmed.

<u>Affirmed.</u>